CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 26 2007

JOHN F. CORCORAN, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KEVIN E. BROWN, | ) | |
|     Petitioner, | ) | Civil Action No. 7:06-cv-00579 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DIRECTOR OF THE DEPARTMENT | ) | By: Hon. Glen E. Conrad |
| OF CORRECTIONS, | ) | United States District Judge |
|     Respondent. | ) | |

Kevin E. Brown, a Virginia inmate proceeding pro se, filed this action as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Brown challenges the validity of his convictions in the Circuit Court for the City of Lynchburg. The petition is presently before the court on the respondent's motion to dismiss. For the reasons set forth below, the court will grant the respondent's motion.

## FACTUAL AND PROCEDURAL SUMMARY

On September 19, 2003, a jury convicted petitioner of statutory burglary, the use of a firearm in the commission of a burglary, and two counts of second degree murder. On November 7, 2003, he was sentenced to imprisonment for a term of forty-three years. Petitioner subsequently appealed his convictions to the Court of Appeals of Virginia. By per curiam opinion and order entered on May 27, 2004, the petition for appeal was denied by a single judge of the Court of Appeals. In its unreported per curiam opinion, the Court of Appeals summarized the facts adduced at petitioner's trial as follows, in relevant part:

> In the early morning hours of April 19, 2002, Rhonda Robinson (Rhonda) and her husband Anthony Robinson (Anthony) were shot to death in their residence at 410 Sussex Street in Lynchburg. Rhonda was shot three times. Anthony was shot eight times.
>
> Rhonda's two daughters, eight-year-old Niesha Whitehead (Niesha) and five-year-old Tiesha Whitehead (Tiesha), were asleep in the Sussex Street home when

intruders entered the residence. Niesha testified she heard Rhonda screaming that someone was in the house. Niesha saw two masked men in the house. One of them wore a black jacket with whites [sic] stripes on the sleeves, and the other wore a black "hoodie." Both wore gloves and had covered their faces with scarves.

One of the men followed Anthony as he ran down the stairs. Afterward, Niesha heard multiple gunshots. The man returned upstairs and shot Rhonda as she was fleeing with Niesha and Tiesha into a bedroom. The intruders left the house. Niesha and Tiesha hid in the bedroom closet for several hours until they were sure the intruders were gone.

The intruders had entered the Robinsons' home by kicking in the kitchen door. A green stocking cap was located just outside the door. Down the street from the Robinson home in front of 404 Westover Boulevard, the police found a pair of brown cotton work gloves and a bandana. Several days before the killings, David Hardy loaned to [petitioner] the gloves found in front of 404 Westover Boulevard. The green stocking cap found near the door of 410 Sussex Street was similar to one Hardy had seen in a pile of clothes in his apartment, which appellant had visited when he obtained the gloves. In front of 418 Westover Boulevard was a black nylon stocking hat, referred to as a "do-rag."

More than a week after the Robinsons were killed, a pedestrian found a gun in a brush pile in front of 404 Westover Boulevard. The gun, a .38 caliber weapon, contained two fired cartridges. A firearms expert connected the .38 caliber gun to bullets found in the living room at 410 Sussex Street and a bullet found in Anthony's body.

Timothy Smith, a cab driver, picked up two men in the early morning hours of April 19. After checking out a house on Carroll Avenue, the two men had Smith drive them to Sussex Street. The men got out of the cab, checked the doors and windows at 410 Sussex Street, and returned to the cab. The men directed Smith to drive them to a 7-11 store on Wadsworth Street. One of the men, who was wearing a black do-rag and a dark "hoodie" sweatshirt, entered the store and was photographed by the store's security camera. A police investigator who knew [petitioner] identified him as the person depicted in the photograph taken in the 7-11.

At some point that night, Michelle Lipford drove appellant and Leon Winston to the Robinson's home on Sussex Street. Appellant and Winston got out of the car and were gone for about ten minutes. When they returned to the vehicle, Lipford took them to her home where they all consumed drugs. Later, she drove appellant and Winston back to the Sussex Street address. Appellant and Winston got out of the car. After a short time Lipford heard gunshots and saw someone running across the street from the Robinsons' home. Lipford left the scene.

2

Carrie Wirgess, a neighbor of the Robinsons, heard the sound of three gunshots followed by five more gunshots early on April 19. Looking out her window, Wirgess saw a man running on Westover Boulevard in the direction of the places where the "do-rag," scarf, and .38 caliber weapon were found. The man was wearing a dark "hoodie" sweatshirt and other clothing identical, with the exception of the "do-rag," to that worn by [petitioner] in the photograph taken by the 7-11 surveillance camera photograph [sic].

Robin Wilson hid a nine millimeter handgun in his apartment at Winston's request after the shootings. The police subsequently found and seized the gun. A firearms expert connected the nine millimeter handgun to the nine millimeter shell casings found at 410 Sussex Street and nine millimeter bullets found in Rhonda's and Anthony's bodies.

After his arrest, [petitioner] was incarcerated with Tron Terry in the Blue Ridge Regional Jail. [Petitioner] told Terry that he "felt bad about what happened," but the only thing he was worried about was DNA evidence. [Petitioner] said he had left a mask or gloves at the scene. [Petitioner] told Terry he and Winston had been promised $10,000 to kill Anthony to prevent him from testifying in a drug case. [Petitioner] said he "had shot Anthony, but he didn't kill nobody," and he fled the house after shooting Anthony.

Testifying as an expert in DNA identification, Nicole Harold found on the recovered gloves a mixture of DNA from [petitioner], Winston, and Hardy. Megan Clement, a DNA expert for the defense, stated she would have excluded appellant as a possible contributor to the DNA on the gloves.

Testifying in his own behalf, [petitioner] stated that he was a drug dealer and Anthony was his supplier. According to appellant, Lipford drove appellant and Winston to Anthony's home to obtain more drugs to sell. Winston disappeared from appellant's sight for about five minutes. When Winston returned from the side of the residence, Winston was accompanied by a tall man whom appellant did not know. Winston and the tall man were wearing masks and were carrying firearms. Winston told appellant all he needed to do was to get them in the door. [Petitioner] stated that he pushed Winston back and fled from the residence. As he fled, appellant heard the door crashing in and a few gunshots. [Petitioner] claimed that one of the gunman [sic] followed him and struggled with him. During the scuffle the gunman dropped his gun. [Petitioner] stated that he then ran from the scene.

Regarding petitioner's contention that the evidence was insufficient, the Court of Appeals

found that

> [t]he Commonwealth's evidence proved [petitioner] and Winston visited the Robinsons' home three times on the night of the shootings. On the third visit,

3

Lipford heard gunshots after [petitioner] and Winston left her vehicle. That night, [petitioner] was wearing a dark "hoodie" sweatshirt just as Niesha testified one of the intruders had worn. The man Wirgess saw fleeing after she heard gunshots was dressed identically to the manner [petitioner] was dressed earlier that night with the exception of a "do-rag." [Petitioner's] DNA was found on gloves [petitioner] had borrowed from Hardy. The gloves were on the street in the vicinity of the Robinsons' home. Moreover, in jail [petitioner] admitted having participated in the shooting at 410 Sussex Street.

Considering all the facts and circumstances, the evidence was sufficient to prove beyond a reasonable doubt that [petitioner] and Winston acted together in entering the Robinsons' home and shooting the two victims and that [petitioner] was guilty of second-degree murder of Rhonda and Anthony, statutory burglary, and the felonious use of a firearm.

Regarding petitioner's contention that "the trial court improperly influenced the jury by inquiring about the status of the jury's deliberations and offering the jury unrequested instruction," the state appellate court found that petitioner "failed to object and advance the arguments he espouses on appeal." Thus, consideration of that question on appeal was barred under Rule 5A:18 of the Rules of the Supreme Court of Virginia. Regarding petitioner's argument that "the trial court erred in permitting the Commonwealth to play an incriminating videotape" during the Commonwealth's cross-examination of petitioner, the appeals court again found that petitioner failed to raise an objection at trial. Accordingly, Rule 5A:18 barred consideration of the question on appeal.

The decision embodied in the <u>per curiam</u> opinion and order was adopted by a three-judge panel of the Court of Appeals of Virginia on July 21, 2004. Brown then filed a petition for appeal in the Supreme Court of Virginia. By order entered November 16, 2004, the petition for appeal was refused.

On December 8, 2005, Brown filed a petition for writ of habeas corpus in the Supreme Court of Virginia. The petition included the following claims:

4

1. His due process rights were violated because the evidence was insufficient to convict him.

2. His due process and equal protection rights were violated by the prosecutor's misconduct during the trial.

3. The trial judge erred by pressuring the jury to reach a verdict.

4. His due process rights were violated by pre-trial publicity.

5. Ineffective assistance of counsel for the following reasons: (a) counsel failed to move for a change of venue; (b) counsel allowed petitioner to talk to police and make incriminating statements; and (c) ineffective handling of petitioner's direct appeal.

By order entered May 5, 2006, the petition was denied. In an unreported opinion denying the petition and granting respondent's motion to dismiss, the Supreme Court of Virginia held that the first three claims were "barred because these issues were raised and decided in the trial court and on direct appeal from the criminal conviction and, therefore, they cannot be raised in a petition for a writ of habeas corpus." The Court held that the fourth claim, alleging a denial of due process due to pretrial publicity, was "procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus."

Regarding petitioner's claims that he "was denied the effective assistance of counsel because counsel failed to request a change of venue," that "there existed extensive pretrial publicity," and that "the possible impaneling of biased jurors was prejudical," the Supreme Court of Virginia held that these claims

> satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner proffers no evidence of pretrial publicity and fails to proffer an evidentiary basis to support his claim that it was possible that biased jurors were impaneled. Furthermore, the record, including orders contained in the criminal record and the affidavit of counsel, demonstrates that a motion for change of venue was made and

5

initially denied by the trial court. Petitioner, thereafter, entered into an agreement with the Commonwealth, in which petitioner agreed not to pursue further a motion for a change of venue in exchange for the Commonwealth's agreement not to pursue the death penalty. Counsel avers that, following voir dire, an impartial jury was impaneled. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Turning to petitioner's allegations that "he was denied the effective assistance of counsel because counsel allowed petitioner to speak with police and to make incriminating statements on videotape" and that "counsel wrongly advised petitioner to enter the 'pretrial agreement' with prosecutors," the Court held that petitioner had failed to satisfy the "performance" and "prejudice" prongs

> of the two-part test enunciated in Strickland. The record, including the affidavit of counsel, demonstrates that counsel encouraged petitioner to speak with the prosecutor and provide the statement, which was identical to petitioner's expected trial testimony, in the hopes that petitioner's cooperation would be considered when counsel negotiated for the prosecution to forgo seeking the death penalty. In the agreement, in which the prosecution waived the death penalty in exchange for petitioner's waiver of the venue issue, the prosecution also promised not to introduce the videotaped statement unless petitioner's trial testimony differed from the pretrial proffer. Counsel disagreed that petitioner's testimony differed from that provided in the proffer and raised the issue, unsuccessfully, on appeal. Petitioner does not articulate how his providing the pretrial proffer, which substantially corroborated his trial testimony, affected the trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Regarding petitioner's contention that he "was denied the effective assistance of counsel on appeal because counsel failed to raise any arguable issues," the Court held that Brown's claim

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of counsel, demonstrates that counsel raised every issue he believed had merit and that counsel discussed these issues with petitioner. The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Petitioner fails to identify any issue counsel failed to raise other than the "public trial claim." That issue was withdrawn at trial in exchange for the prosecutor not seeking the

6

death penalty and would have been barred by Rule 5A:18. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the appeal would have been different.

Accordingly, Brown's petition was dismissed. On September 20, 2006, the Supreme Court of Virginia denied Brown's subsequent petition for rehearing.

Brown executed the instant petition on September 26, 2006. The petition includes the following claims:

1. The evidence was insufficient to convict him.

2. His due process and equal protection rights were violated due to prosecutorial misconduct.

3. The trial judge erred in "making several attempts to pressure [the] jury into reaching a verdict."

4. Pretrial publicity violated petitioner's due process rights.

5. Ineffective assistance of counsel on the following bases: (a) counsel's failure to move for a change of venue; and (b) counsel allowed petitioner to talk to police prior to trial.

The respondent moved to dismiss Brown's petition on December 22, 2006. Brown has filed a response, and the petition is now ripe for disposition. The court will include additional facts in its discussion as necessary.

## ANALYSIS

### Standard of Review

Pursuant to 28 U.S.C. § 2254(b), a petitioner challenging a state court conviction must first exhaust remedies available in the courts of the state in which he was convicted before seeking federal habeas review. See Preiser v. Rodriguez, 411 U.S. 475 (1973). When a claim has been adjudicated on the merits by a state court, this court may grant habeas relief only if the state court's adjudication

7

of the claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The United States Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389.

## Discussion

### Claim 1

In his first claim, Brown alleges that his "due process" and "equal protection" rights were violated because the evidence at trial was insufficient to convict him. On direct appeal, the Court of Appeals of Virginia, in its per curiam order of May 27, 2004, rejected petitioner's sufficiency of the evidence claim, and the Supreme Court of Virginia subsequently refused his appeal. Because the claim has been properly exhausted in the state courts, this court can address its merits, pursuant to 28 U.S.C. § 2254(d).

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the right to a fair trial and requires the prosecution to prove each element of the crime beyond a reasonable doubt. On review of a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,

8

319 (1979). Having reviewed the record, the court agrees with the respondent that there is sufficient evidence to prove petitioner's guilt beyond a reasonable doubt.

Of significance here, petitioner relies on a report detailing an audit of the Commonwealth of Virginia Division of Forensic Science Central Laboratory Biology/DNA Unit.[1] Apparently, the auditors determined that, in the analysis of the DNA found on the glove found on the street in the vicinity of the Robinsons' home, "the interpretive statistical conclusion reached by the analyst was inappropriate . . . ." However, the auditors also stated: "[W]e agree with the analyst's conclusion that the three suspects could not be eliminated as possible contributors and that the two victims could be eliminated as possible contributors."[2] Moreover, the auditors concluded "that there is no evidence

---

[1] Petitioner submitted only a portion of the report (specifically, pages 10 through 14). Accordingly, the court cannot determine the date of the report. Petitioner also presents the first page of a letter, dated September 12, 2005, from the Honorable Robert J. Humphreys of Virginia Beach to then-Governor of Virginia, Mark R. Warner. To lead the audit, which was conducted by five DNA experts from outside, Virginia Governor Warner had appointed Judge Humphreys, of the Court of Appeals of Virginia. Judge Humphreys' letter refers to the report. The submitted portion of the report refers to the capital case against petitioner's confederate, Leon Jermain Winston, in the Robinson murders.

Respondent does not dispute the veracity of the report. Respondent states that the report was issued on September 12, 2005, and points out that petitioner filed his state habeas petition on December 8, 2005, and that the Supreme Court of Virginia did not deny rehearing until September 20, 2006. Respondent notes:

> Clearly, the information relied upon by the petitioner in this Court was available during the pendency of his state habeas. Although he made some reference to the report in his petition for rehearing in state habeas, he did not make the detailed argument he now makes in this Court. See Kasi v. Angelone, 300 F.3d 487 (4th Cir. 2002) (stating that federal habeas petitioner must have presented "operative facts" underlying his claim in state court in order to exhaust it). Moreover, the Supreme Court of Virginia rejected his petition for rehearing. To the extent the petitioner did raise the claim in his petition for rehearing, it was rejected. That rejection is entitled to deference in this Court under the AEDPA.

Because petitioner raised the issue of the auditors' report in his petition for a rehearing of his habeas claim before the Supreme Court of Virginia, the issue is deemed exhausted before the state courts, and this court may consider the claim.

[2] The auditors' report states that the analyst recovered DNA samples from seven other items of evidence in Leon Jermain Winston's case, and that those seven items and the glove had been "amplified and typed [by the analyst] using the PowerPlex® 16 Bio System." The auditors noted that "the analyst's conclusions pertaining to the PowerPlex® typing results for the remaining seven items were scientifically supported."

9

that the protocol implemented by [the Division of Forensic Science] in low-level DNA cases contains scientific inaccuracies that would render the typing results in those cases scientifically unsound."

Under the Jackson standard, a rational, reasonable jury could have found petitioner guilty, with or without DNA evidence concerning the glove. In the first instance, the Commonwealth's DNA identification expert's testimony did not go unchallenged. The record indicates that petitioner presented his own DNA expert in his defense. Petitioner's expert testified that she would have excluded appellant as a possible contributor to the DNA on the gloves. Given that the auditors' report states that the "statistical conclusion reached by the analyst was inappropriate" but concludes that there were no "scientific inaccuracies," and also determines that petitioner was in fact a possible contributor to the DNA found on the gloves, the court finds that petitioner's argument fails to warrant habeas relief. Inasmuch as the auditors' report may constitute newly discovered evidence, the evidence does not bear upon the constitutionality of petitioner's detention. See Herrera v. Collins, 506 U.S. 390, 400-01 (1993) ("[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding").

At most, the challenged DNA evidence provided additional proof of the petitioner's presence at the crime scene. Petitioner's own admissions on the witness stand also placed him at the crime scene. Moreover, as the recitation of the facts above indicates, the record reveals ample additional circumstantial evidence linking Brown to the crime, including his in-jail admission that he had participated in the shooting at 410 Sussex Street.[3]

---

[3] To the extent petitioner may be presenting to this court an "actual innocence" argument based on the auditors' report, that claim is rejected. A claim of actual innocence based on newly discovered evidence is not ground for federal habeas relief; federal habeas courts sit to ensure that individuals are not imprisoned in

10

Case 7:06-cv-00579-GEC-mfu   Document 24   Filed 03/26/07   Page 10 of 16   Pageid#: 223

Upon consideration of the record, the court concludes that the evidence was sufficient to prove petitioner's guilt beyond a reasonable doubt.

## Claims 2 and 3

In claim 2, petitioner contends that the trial court erred in permitting the Commonwealth, during its cross-examination of petitioner, to introduce an incriminating videotape interview of petitioner.[4] In claim 3, petitioner argues that the trial court erred in pressuring the jury to reach a verdict.[5] The Court of Appeals of Virginia found that these claims were procedurally defaulted under Va. Sup. Ct. Rule 5A:18 because petitioner failed to object contemporaneously to the

---

violation of the Constitution, not to correct errors of fact. Herrera, 506 U.S. at 400-01.

[4] On September 10, 2003, petitioner and the Commonwealth entered into a pretrial stipulation, whereupon the parties agreed, inter alia, to the following:

> If [petitioner] chooses not to testify at his aforementioned trial or trials, his video taped and audio taped statement to the members of the Lynchburg Commonwealth's Attorney's Office and Lynchburg Police Department, given on or about February 11, 2003, will be admissible in his trial or trials. At its option the Commonwealth may present this statement in its case in chief or in rebuttal to any testimony or evidence of any type offered by the defendant. In the event defendant does not offer any evidence, then the Commonwealth will be allowed to reopen its case-in-chief and introduce the aforesaid February 11, 2003 statement if not introduced in the Commonwealth's case-in-chief[.]

[5] The Court of Appeals of Virginia summarized the facts concerning this claim:

> [Petitioner] contends on appeal the trial court improperly influenced the jury by inquiring about the status of the jury's deliberations and offering the jury unrequested instruction. After the jury had deliberated during the guilt phase for about six hours, the trial court proposed calling the jury to the courtroom to inquire of the status of deliberations. Both appellant and the Commonwealth requested the court to refrain from doing so, and the court abided by the request. Subsequently during deliberations, however, the trial court asked the jury foreperson to enter the courtroom and report upon the jury's progress. [Petitioner] did not object that the trial court's contact with the jury foreperson was inappropriate or contend that the court had provided the jury with erroneous instruction.

Other evidence indicates that the court was concerned about the weather. Hurricane Isabel made landfall on the North Carolina coast on September 18, 2003, and continued to wreak havoc across Virginia on September 19, 2003. The jury returned its verdict on September 19, 2003.
Plaintiff contends that the trial judge gave unrequested instruction to the jury because, although the jury foreman had indicated to the court that the jury was not deadlocked, the judge made general comments to the foreman about deliberations.

11

presentation of the videotape evidence or to the questions the trial judge asked the jury regarding the status of its deliberations. The Supreme Court of Virginia summarily affirmed and, when presented with these same arguments in Brown's habeas petition, held that the claims were procedurally barred because the claims had been raised on direct appeal.

A federal court will not review a claim that is procedurally defaulted "absent cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default." See Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998). In order for a claim to be defaulted, a state court must expressly find that review is barred by an independent and adequate state procedural rule. Id. A state procedural rule is "adequate" if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is "independent" if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Rule 5A:18 of the Rules of the Supreme Court of Virginia states that the appellate court will not consider an issue on appeal unless the appellant raised an objection at trial. This contemporaneous objection rule is an adequate and independent state procedural bar which forecloses federal habeas review. Therefore, claims 2 and 3 may not be reviewed by this court absent a showing of cause and prejudice or actual innocence. See Roach v. Angelone, 176 F.3d 210, 221 (4th Cir. 1999).

To establish cause for the procedural default, a petitioner must demonstrate that some "objective factor" external to his defense impeded him from complying with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, "a petitioner must offer 'new reliable evidence . . . that was not presented at trial,'" and "'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Applying these principles, the court concludes that Brown has failed to establish cause and prejudice or actual innocence to excuse his procedural default. First, Brown has failed to proffer any evidence to establish that any objective factor, external to his own defense, prevented him from objecting at the appropriate time before the trial court. Likewise, Brown has failed to proffer sufficient evidence to establish an actual innocence claim under Schlup.[6] Consequently, claims 2 and 3 must be dismissed as procedurally barred.

### Claim 4

In his fourth claim, petitioner contends that he was denied a fair trial due to prejudicial pretrial publicity. Petitioner did not raise this issue in his direct appeal to the Court of Appeals of Virginia. Thus, when he raised this issue in his state habeas proceeding, the Supreme Court of Virginia found the claim to be procedurally defaulted under Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974) (an inmate is procedurally defaulted from raising claims in a habeas proceeding which could have been raised during trial or appellate proceedings). The United States Court of Appeals for the Fourth Circuit has recognized Slayton as an independent and adequate procedural rule that renders the claim procedurally defaulted in this court. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006); see also Wright v. Angelone, 151 F.3d 151, 159-60 (4th Cir. 1998); Mu'min v. Pruett, 125 F.3d 192, 196 (4th Cir.1997), cert. denied, 522 U.S. 978 (1997); Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir.1996), cert. denied, 519 U.S. 1002 (1996); Spencer v. Murray, 18 F.3d 229, 232 (4th Cir.1994). Therefore, absent cause and prejudice or a miscarriage of justice to excuse the procedural default, this court may not review Brown's claim regarding pretrial publicity because the state court

---

[6] As discussed above, although Brown presents a portion of the auditors' report to support his habeas petition, he has failed to show that it is more likely than not that no reasonable juror would have convicted him in light of that evidence.

13

declined to consider its merits upon the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989).

To establish "cause" for the default, a prisoner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. This requires a demonstration that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." Roach, 176 F.3d at 222 (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)). A petitioner may not establish cause "by pointing to evidence that the petitioner 'knew about or could have discovered' through a 'reasonable investigation'" at the time of the state proceeding. Basden v. Lee, 290 F.3d 602, 618 (4th Cir.2002) (quoting McCleskey, 499 U.S. at 497-98); see also Rose v. Lee, 252 F.3d 676, 687 (4th Cir.2001).

Here, rather than relying on evidence not "reasonably available" to him "at the time of the state proceeding," Brown instead "point[s] to evidence" that he clearly "knew about" at the time of his trial.[7] Accordingly, this claim is dismissed as procedurally defaulted.

## Claim 5

In claim 5, Brown alleges that his trial counsel was ineffective for failing to move to change venue and for allowing him to speak with investigators prior to trial. A criminal defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the United States Constitution. In Strickland v. Washington, 466 U.S. 668, 669 (1984), the United States Supreme Court set forth a two-prong test for evaluating ineffective assistance claims. The defendant must show that his counsel's performance fell "below an objective standard of reasonableness," and that

---

[7] In fact, inasmuch as petitioner claims that the pretrial publicity warranted a change of venue, the court notes that petitioner explicitly agreed in the pretrial stipulation to abandon any motion for a change of venue in exchange for the Commonwealth's agreement not to seek the death penalty.

14

the "deficient performance" must have "prejudiced the defense." Id. at 687-688. The prejudice prong "generally requires the defendant to demonstrate by a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

Brown raised the same ineffective assistance claims in his state habeas petition. As stated in the preceding factual and procedural summary, the Supreme Court of Virginia held that the claim failed to satisfy either prong of the Strickland test. Having reviewed the record, the court agrees with the respondent that the Supreme Court's disposition of this claim did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts.[8] Accordingly, claim 5 must be dismissed.

## **CONCLUSION**

For the reasons stated, the court will grant the respondent's motion to dismiss. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals or this court

---

[8] Counsel did, in fact, move for a change of venue. The motion was denied on September 2, 2003, with the proviso that it could be renewed. Petitioner subsequently agreed not to move for a change of venue in exchange for the Commonwealth's agreement not to seek the death penalty. A petitioner cannot obtain habeas relief for a tactical decision with which he agreed. See United States v. Weaver, 882 F.2d 1128, 1140 (7th Cir. 1989) ("Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel"); United States v. Williams, 631 F.2d 198, 204 (3d Cir.1980) (no ineffective assistance of counsel where defendant ultimately concurred in his trial counsel's tactical decision). Moreover, petitioner's trial counsel's statement, which is part of the record in this case, states that "the Court summonsed a large number of potential jurors, and after extensive voir dire . . . there were a sufficient number of impartial jurors to go forward with trial. If an impartial jury panel could not be qualified, then the Court would have reconsidered my Motion for a Change of Venue."

Regarding petitioner's claim that counsel was ineffective in allowing him to speak with investigators, this court's review of the record, including petitioner's trial counsel's statement, supports the Supreme Court of Virginia's determination that counsel encouraged petitioner to speak with investigators "in the hopes that petitioner's cooperation would be considered when counsel negotiated for the prosecution to forgo seeking the death penalty."

15

issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, the court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

**ENTER**: This 23rd day of March, 2007.

United States District Judge